STATE OF MICHIGAN
THIRD CIRCUIT COURT



**SUMMONS AND
RETURN OF SERVICE**

HOE*, DENIS , et al. v SUNRISE SE
Hon. Robert L. Ziolkowski      06/22/2011



11-007538-NH

| COURT ADDRESS: 2 WOODWARD AVENUE, DETROIT, MICHIGAN 48226 | COURT TELEPHONE NO. (313) 224- |
|---|---|

| THIS CASE ASSIGNED TO JUDGE: Robert L. Ziolkowski | Bar Number: 22745 |
|---|---|

| PLAINTIFF | DEFENDANT |
|---|---|
| HOEY, DENIS | VS      G P WOODS ASSISTED LIVING LLC |

PLAINTIFF'S ATTORNEY

Feldman, Stanley J.
(P-52123)
31731 Northwestern Hwy Ste 333
Farmington Hills, MI 48334-1669
(248) 737-8400

| CASE FILING FEE | | JURY FEE | |
|---|---|---|---|
| Paid | | Paid | |
| **ISSUED** | **THIS SUMMONS EXPIRES** | **DEPUTY COUNTY CLERK** | |
| 06/22/2011 | 09/21/2011 | Latonya Smith | |

*This summons is invalid unless served on or before its expiration date.      Cathy M. Garrett – Wayne County Clerk

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The docket number and assigned judge of the civil/domestic relations action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

The action ☐ remains ☐ is no longer      pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

| Date | Signature of attorney/plaintiff |
|---|---|
| | |

**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**

If you require special accommodations to use the court because of disabilities, please contact the court immediately to make arrangement.

FORM NO. WC101
REV. (3-98)    MC 01 (10/97)      **SUMMONS AND RETURN OF SERVICE**      MCR 2.102(B)(11), MCR 2.104, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206 (A)

DEFENDANT

For best results use a felt pen

H , DENIS , et al. v SUNRISE SE
Hon. Robert L. Ziolkowski      06/22/2011

## RETURN OF SERVICE


11-007538-NH

**TO PROCESS SERVER:** You are to serve the summons and complaint not later
make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies
to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that:   (notary not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notary required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ After diligent search and inquiry, I have been unable to find and serve the following defendant(s):

I have made the following efforts in attempting to serve the defendant(s): _____

☐ I have personally attempted to serve the summons and complaint, together with _____
Attachment

_____ on _____
Name

at _____ and have been unable to complete service because
Address

the address was incorrect at the time of filing.

| Service fee | Miles traveled | Mileage fee | Total fee |
|---|---|---|---|
| $ | | $ | $ |

Signature _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____  Signature: _____
Date                                    Deputy court clerk/Notary public

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

on behalf of _____

Signature _____

**STATE OF MICHIGAN**

JUN 22 2011

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

DENISE HOEY, Attorney in Fact and
Next Friend of DELPHINE KAISER,

HOEY, DENIS , et al. v SUNRISE SE
Hon. Robert L. Ziolkowski        06/22/2011

Plaintiff

11-007538-NH

v.

SUNRISE SENIOR LIVING, INC., a Foreign
Profit Corporation (operating SUNRISE OF
GROSSE POINTE WOODS), and G. P. WOODS
ASSISTED LIVING, LLC, a Foreign Limited
Liability Company,

Defendants,

THE SAM BERNSTEIN LAW FIRM
STANLEY J. FELDMAN (P52123)
SAMUEL I. BERNSTEIN (P10745)
31731 Northwestern Hwy, Suite 333
Farmington Hills, MI 48334-1669
(248) 538-3147
(248) 737-4392 Fax

There is no other civil action between these parties arising out of the same
transaction or occurrence as alleged in this complaint pending in this Court, nor has
any such action been previously filed and dismissed or transferred after having been
assigned to a judge, nor do I know of any other civil action, not between these
parties, arising out of the same transaction or occurrence as alleged in this
complaint that is either pending or was previously filed and dismissed, transferred,
or otherwise disposed of after having been assigned to a judge in this Court.

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, DELPHINE KAISER, by and through her Attorney in Fact and

Next Friend, DENISE HOEY, represented by THE SAM BERNSTEIN LAW FIRM and

attorney STANLEY J. FELDMAN, and does hereby complain against the above named

Defendants stating on to this Honorable Court as follows:

## JURISDICTIONAL ALLEGATIONS

1.      That the Plaintiff DELPHINE KAISER was at the time of this incident a resident

of SUNRISE OF GROSS POINTE WOODS senior assisted living facility located at 21260

Mack Avenue, Grosse Pointe Woods, in the County of Wayne, State of Michigan.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

2. That the complained of acts and/or omissions occurred at the assisted living community, commonly referred to as SUNRISE OF GROSS POINTE WOODS, located at 21260 Mack Avenue, in the City of Grosse Pointe Woods, County of Wayne, State of Michigan.

3. That the Plaintiff DENISE HOEY is the daughter, Attorney in Fact and Next Friend of DELPHINE KAISER, and is currently a resident of Carlesbad, California (with DELPHINE KAISER now living in the State of California in close proximity).

4. That the Defendant SUNRISE SENIOR LIVING, INC., (on information and belief also known as SUNRISE SENIOR LIVING INVESTMENTS, INC., SUNRISE SENIOR LIVING MANAGEMENT INC., AND/OR SUNRISE SENIOR LIVING SERVICES, INC.) is a foreign profit corporation with corporate headquarters in McLean, Virginia, and which company accepts service process through the corporation and company located at 30600 Telegraph Road, Bingham Farms, Michigan 48025, and which at all times conducted business in the County of Wayne, State of Michigan, as the owner and/or operator of assisted living communities, including, but not limited to, that assisted living community, commonly known as and previously referred to as SUNRISE OF GROSS POINTE WOODS.

5. That at all times pertinent hereto SUNRISE OF GROSS POINTE WOODS was a part of the Defendant SUNRISE SENIOR LIVING, INC., holding itself out to the public as being a member of the "Sunrise Community".

6. That additionally, or in the alternative, at all times pertinent hereto the Defendant G. P. WOODS ASSISTED LIVING, LLC, was a foreign limited liability company, with corporate address 7902 West Park Drive, McLean, Virginia 44202 and was the registered applicant for the facility commonly known as and previously referred to as SUNRISE OF GROSS POINTE WOODS located at 21260 Mack Avenue, Grosse Pointe Woods, Michigan 48236.

. THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

2

7. That the Defendant SUNRISE SENIOR LIVING, INC., was at all times pertinent hereto the owner and/or operator, and was otherwise in possession and/or control over the Sunrise Community, including SUNRISE OF GROSS POINTE WOODS, located at 21260 Mack Avenue, Grosse Pointe Woods, Michigan 48236, where the acts and/or omissions complained of took place.

8. That additionally, or in the alternative, at all times pertinent hereto the Defendant, G. P. WOODS ASSISTED LIVING, LLC, was the owner and/or operator, and/or otherwise in possession and/or control over, SUNRISE OF GROSS POINTE WOODS, located at 21260 Mack Avenue, Grosse Pointe Woods, Michigan 48236 where the acts and/or omissions complained of took place.

9. That the amount in controversy exceeds the sum of $25,000.00 (Twenty-Five Thousand Dollars) exclusive of interest, costs and attorneys fees and is otherwise within the jurisdiction of this court.

## COUNT I
## NEGLIGENCE

10. That on May 1, 2009, the Plaintiff DELPHINE KAISER took up residency in SUNRISE OF GROSS POINTE WOODS assisted living community shortly after she lost her husband due to cancer and because she could not otherwise take care of herself or manage her own affairs due to advanced dementia and sequelae thereof.

11. That from that point forward DELPHINE KAISER was a resident of/in the "Reminiscence Unit," and "Reminiscence Neighborhood", part of the "Reminiscence memory care program," of Sunrise and which was marketed by these Defendants to the public, and to DELPHINE KAISER in particular, as being unique by design, the most advanced program for those residents with special needs as a result of dementia, and which representations of material fact also included that the Reminiscence Neighborhood would provide unparalleled safety and

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

3

security to those with dementia (the combination of website and/or written materials provided, together with repeated verbal assurances made by Defendant's staff) thereby enticing DELPHINE KAISER, and the responsible family members then assisting her, to enroll her in the Defendants' program/facility/community.

12. That a the contract for services/Residency Agreement, entered into for and/or on behalf of DELPHINE KAISER with these Defendants specifically provided: "the services and programs described in the following pages of this Residency Agreement are available to the residents as determined by the Community following an Assessment processed described in Article I. Pursuant to Rule 324.1922 of the Michigan Homes for the Aged Regulations: "The Community shall provide room, board, protection, supervision, assistance and supervised personal care consistent with the resident's service plan":

ARTICLE VI
Services Available to Residents at the Community

A. Services Available at the Community. The services and programs described in the following pages of this Residency Agreement are available to residents, as determined by the Community following the Assessment process described in Article I. Pursuant to R325 1922 of the Michigan Homes for the Aged Regulations the Community shall provide room, board, protection, supervision, assistance, and supervised personal care consistent with the residents service plan.

13. That the Program and Services Description, included as part of the contract for services/Residency Agreement, represents how base services to all residents, including DELPHINE KAISER, will include, though not be limited to, monitoring and observing of the Resident, and supervision with activities of daily living, including, but not limited to ambulation and orientation:

PROGRAMS AND SERVICES DESCRIPTION

ASSISTED LIVING – BASE SERVICES

The Resident will received the following services (the "Assisted Living Base Services'), which are included in the Assisted Living Base Fee, subject to the terms and conditions of this Agreement

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

4

A. Basic assistance including montoring and observing of the Resident, providing the Resident with reminders and supervision with activities of daily living, including, but not limited to, eating, bathing, dressing, grooming, toileting, ambulating, and orientation. This includes verbal assistance and/or direction with showering or hydro-tub bath one time per week. It does not include any other hands-on assistance with any of the above-mentioned activities of daily living

14. That additionally, the Program and Services Description, provided as part of the contract for services/Residency Agreement, represents that as to those residents, such as DELPHINE KAISER, who elected to enroll in the Reminiscence Program, and who chose to pay for "Reminiscence Plus" and "Reminiscence Plus Plus" Programs, and "Enhanced Care" Programs, and at additional charge, they would receive additional services, including, but not limited to, 24 hour staffing in the Reminiscence Neighborhood by care managers specially trained in dealing with people with memory loss, more frequent and intensive assistance and/or additional staff time and/or assistance by more than one caregiver as necessary:

## REMINISCENCE PROGRAM

The Community's Reminiscence Program ("Reminiscence Program") is designed for residents who have a diagnosis on their Physician's Report of Alzheimer's disease or related disorder such as dementia or, it has been determined through the Reminiscence Assessment that ti is in the best interest of the Resident. Residents in this program will reside in accommodations within our specially designed Reminiscence Neighborhood. The Reminiscence Neighborhood is staffed 24 hours a day by care managers who have been specially trained to support people with memory loss.

Included in the Reminiscence Base Fee is your choice of accommodations within our specially designed Reminiscence Neighborhood.

The Reminiscence Program Fee includes some basic assistance with activities of daily living and services B through L listed under "Assisted Living – Base Services."

## "REMINISCENCE PLUS" AND "REMINISCENCE PLUS PLUS" PROGRAMS

The Community's "Reminiscence Plus" and "Reminscence Plus Plus" Programs for Alzheimerr's and Dementia care are designed for residents who require or prefer more frequent and intensive assitance with activities of dialy living, as determined by the personalized assessment utilizing a point system. The Reminiscence Plusand Reminiscence Plus Plus Program Fees are in addition to the Reminiscence Base Fee.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

## ENHANCED CARE PROGRAM

The Community's Enhanced Care Program is designed for Residents whose needs cannot be met under the Assitied Living Plus Plus Program because they requireadditional staff time or they consitently require assitnace by more than one caregiver.

15. That the fee for the base Reminiscence Program, and "Reminiscence Plus" and "Reminiscence Plus Plus" Programs, and "Enhanced Care" Programs, and associated services that were to be provided to and/or or for the benefit of DELPHINE KAISER by these Defendants, and as part of her living in the "Reminiscence Unit", was a self pay of $63,360.00 per year, which was in fact tendered to these Defendants, , SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, and for which DELPHINE KAISER was entitled to receive the premium care services contracted for and otherwise agreed upon.

16. That at all times pertinent hereto, the staff at SUNRISE OF GROSS POINTE WOODS who were responsible for delivering the care and/or contractual services specified and/or who otherwise owed the duty of care as specified, were the actual, express, implied, and/or ostensible agents, servants and/or employees of Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, and/or were acting in the course and scope their employment and/or agency, for which one or both of these Defendants is vicariously liable and/or liable pursuant to the Doctrine of *Respondent Superior* for the acts and/or omissions complained of.

17. That these Defendants, , SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, specifically represented to DELPHINE KAISER and her responsible family members acting on her behalf that they (the Defendants) would and could provide room, board, protection, supervision, assistance, observation and supervised personal care consistent with the contract for services/Residency Agreement and Program and Services Description contained therein, additional services in the form of extra personalized attention,

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

6

assistance and staffing paid for through enhanced/extra care services, and the unique and unparalleled safety and security as part of the Reminiscence Program.

18.     That the Defendants, , SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, by and through their agents and/or employees did not provide the necessary and/or additional protection, supervision, observation and/or assistance consistent with the contract for services/Residency Agreement and Program and Services Description contained therein and which was otherwise a contractual obligation and/or required by common law and/or by statute, let alone live up to its representations of unparalled safety and security for those enrolled in the Reminiscence program.

19.     That at all times while residing in Defendants , SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC,'s assisted living community DELPHINE KAISER was an elderly woman suffering from dementia, which denied her the ability to take care of herself or manage her own affairs, and which condition made her a vulnerable adult and at risk for injury unless provided adequate caregiver assistance, a fact which was known to these Defendants by virtue of discussions with family members, interactions with the resident, the unambiguous nature of the contract for services/programs negotiated and paid for, and periodic resident assessments performed, among others indicia.

20. .    That as a result of her dementia condition, DELPHHINE KAISER required a higher level of supervision and care, again a fact which was known to these Defendants , SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, and for which additional compensation was paid/received for her to acquire same.

21.     That a special relationship existed between these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC,and DELPHINE KAISER because of her inability to protect herself from harm due to cognitive and other conditions and the fact that DELPHINE KAISER had been entrusted to the control and protection of these

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

7

Defendants with subsequent surrender and loss of control by the responsible family members who had contracted on her behalf with the Defendant's for the Defendants , SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, to provide necessary support, protection and assistance in their place and stead and as part of her residency and care in Defendants Reminiscence community/program.

22.     That these Defendants , SUNRISE SENIOR LIVING, INC.,  and/or G. P. WOODS ASSISTED LIVING, LLC, received an economic benefit as a result of that special relationship in the form of payments for additional services and care programs.

23.     That these Defendants , SUNRISE SENIOR LIVING, INC.,  and/or G. P. WOODS ASSISTED LIVING, LLC, acknowledged the special relationship by admitting DELPHINE KAISER into its Reminiscence Program/Community appropriate only for those suffering from Alzheimers, dementia and/or other cognitive impairment.

24.     That these Defendants , SUNRISE SENIOR LIVING, INC.,  and/or G. P. WOODS ASSISTED LIVING, LLC, had the ability and duty to comply with that heightened duty of care established by this special relationship, or in the alternative represented to DELPHINE KAISER and her responsible family members that they had such ability.

25.     That at all times relevant it was well known to these Defendants (SUNRISE SENIOR LIVING, INC.,  and/or G. P. WOODS ASSISTED LIVING, LLC) staff members at SUNRISE OF GROSS POINTE WOODS (as evidenced by wellness and health updates sent monthly) that DELPHINE KAISER would tend to wander, and, consequently, it was documented how the facility care managers were to know her whereabouts at all times. Further, that keeping her involved in activities would ensure this would occur.

26.     That on the date in question, on or about July 4, 2009, an activity for the residents, including DELPHINE KAISER, was taking place in the dining area believed to be some sort of craft activity.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

23. That DELPHINE KAISER foreseeably wandered away from the activity because she was not being carefully observed, supervised and/or protected.

24. That DELPHINE KAISER, consequently became the victim of a sexual attack perpetrated by "Chester" Erbin Wattles, another resident living at that assisted living facility, who was legally incompetent.

25. That the ongoing attack was interrupted only by way of happenstance, after a facility worker who came upon Mr. Wattles' room while passing out cupcakes, and found his door to be locked.

26. That once the door was unlocked and opened the facility worker observed Mr. Wattles wearing only a T-shirt, standing next to his bed, hunched over his left hand on the bed and his right hand (fingers) in the vagina DELPHINE KAISER, who was on the bed unclothed, except for her shirt which was pushed up near her neck, her arms in the up position, with tears in her eyes.

27. That DELPHINE KAISER was seen for medical treatment due to blood observed in the area of the vagina.

28. That in the aftermath Mr. Wattles was taken in for psychological/psychiatric evaluation, removed from SUNRISE OF GROSS POINTE WOODS and transported to another Sunrise Assisted Living Facility located at 1850 Vernier Road.

29. That upon information and belief the staff of SUNRISE OF GROSS POINTE WOODS was initially not going to report the incident but later did so because they found it necessary to call a doctor due to the obvious signs of sexual penetration including bleeding from the vagina.

30. That following the assault of July 4, 2009, these Defendants, including, but not limited to its staff at SUNRISE OF GROSS POINTE WOODS, changed its practice to now perform 15 minutes checks on its residents.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

9

31. That this was not the practice of these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, including, but not limited to its staff at SUNRISE OF GROSS POINTE WOODS, in effect on the date and time of this incident however, and supervisory checks on residents were performed in a substandard and/or untimely fashion, if at all.

32. That the staff of these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, operating SUNRISE OF GROSS POINTE WOODS either knew or should have known of the threat/risk posed by Mr. Wattles to DELPHINE KAISER and other vulnerable female residents similarly situated, based on inappropriate and overtly sexual advances on DELPHINE KAISER and/or other female residents previously made by Mr. Wattles, specifically including, but not limited to, prior instances where Mr. Wattles had groped DELPHINE KAISER's breasts and/or attempted to kiss and/or fondle her.

33. That DELPHINE KAISER did not welcome these prior or subsequent overt sexual advances and/or inappropriate physical contacts by Mr. Wattles.

34. That additionally at all times DELPHINE KAISER was incapable of consenting to any physical contact with anyone during her stay at SUNRISE OF GROSS POINTE WOODS.

35. That the Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLCs, prior awareness of Mr. Wattles inappropriate or overtly sexual advances on DELPHINE KAISER and/or other residents of the facility was such that the Defendants staff at SUNRISE OF GROSS POINTE WOODS jokingly, albeit in poor taste, referred to Mr. Wattles, whose nickname was "Chester," as "Chester the Molester".

36. That despite receiving advance notice of the sexually aggressive and inappropriate behavior of Mr. Wattles, dangers associated therewith from these prior episodes of inappropriate touching, the staff of these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, operating SUNRISE OF GROSS POINTE WOODS did

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

nothing to timely remove Mr. Wattles from this facility, or otherwise provide adequate let alone increased supervision and monitoring from and against same (not even as required by the contract for services/Residency Agreement and at variance with common law and statute).

37. That without such action and precaution being undertaken by these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, a sexual attack by Mr. Wattles on DELPHINE KAISER or another vulnerable female resident at SUNRISE OF GROSS POINTE WOODS was imminent, foreseeable and/or predictable.

38. That at all times these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, owed a duty of reasonable care to protect Plaintiff DELPHINE KAISER and other vulnerable adults residing in the Reminiscence program/community from the risk of injury, including, but not limited to, that associated with wandering and/or elopement through or out of the facility unsupervised, as well as to protect these residents from and against those individuals who these Defendants knew or had reason to know posed a foreseeable danger or risk of harm to these residents, and to provide appropriate safety supervision and monitoring and protection as needed from and against same.

39. That notwithstanding its duties and obligations as hereinbefore narrated these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, were guilty of one or more of the following negligent acts and/or omissions:

> a. Negligently, carelessly and/or recklessly failing to properly observe, monitor, protect and/or supervise vulnerable adults, such as DELPHINE KAISER, from and against injury, including, but not limited to, the risks of injury during elopement and/or wandering through and/or out of the community unsupervised;
>
> b. Negligently, carelessly and/or recklessly failing to timely remove individuals from the facility, such as Mr. Wattles, who were known to pose a risk or danger or harm to the vulnerable adult female residents based on prior acts of un-consented to and overt sexual contact with DELPHINE KAISER and/or other residents of the community/program among other indicia;

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

11

c. Negligently, carelessly and/or recklessly admitting residents, such as Chester Wattles, to the Defendant's community/program, where vulnerable adults resided, such as DELPHINE KAISER, and where the Defendants either knew or should have known of his dangerous propensities and risk of harm same posed to other memebers/residents, including DELPHINE KAISER;

d. Negligently, carelessly and/or recklessly failing to adopt, implement, and/or adhere to appropriate polices, practices and/or procedures regarding the safety, supervision, and/or monitoring of vulnerable adults residing within the facility such as DELPHINE KAISER;

e. Negligently, carelessly and/or recklessly failing to adequately train and/or supervise personnel in regards to observation, safety supervision and/or monitoring and in the appropriate care to be provided to vulnerable adults such as DELPHINE KAISER.

f. Negligently, carelessly and/or recklessly failing to timely and appropriately observe, supervise and/or monitor DELPHINE KAISER from and against wandering and/or injury;

g. Negligently, carelessly and recklessly failing to supervise and monitor Mr. Wattles so he would not cause injury to other vulnerable residents, including, but not limited to DELPHINE KAISER;

h. Negligently, carelessly and/or recklessly failing to deliver care services as promised;

i. Negligently, carelessly and/or recklessly being inadequately staffed, incapable of delivering care services as promised, and/or misallocating resources and/or spending so that such care services were incapable of being delivered as promised;

j. Negligently, carelessly and/or recklessly failing to take adequate precautions or care as was required under the circumstances;

k. Negligently, carelessly and/or recklessly failing to adequately protect and/or safeguard DELPHINE KAISER from and against foreseeable hazards;

l. Negligently, carelessly and/or recklessly conducting negligent acts and/or omissions of negligence to be determined through the course of discovery;

m. Otherwise failing to act reasonably prudent under the same or similar circumstances;

40.   That as a direct and proximate result of the acts of negligence, carelessness, and/or recklessness complained of, committed by the Defendants, SUNRISE SENIOR LIVING,

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

INC., and/or G. P. WOODS ASSISTED LIVING, LLC, and their agents, servants, and/or employees described above Plaintiff DELPHINE KAISER suffered injury from and as a result of the un-consented to and overtly sexual contact with Mr. Wattles which injuries include though are not limited to:

      a.  Pain and suffering;

      b.  Fright, shock, and/or mortification;

      c.  Loss and/or violation of dignity;

      d.  Mental anguish and anxiety;

      e.  Aggravation and/or exacerbation of underlying mental condition;

      f.  Economic loss

WHEREFORE for all of the above stated reasons Plaintiff DELPHINE KAISER, by and through her Atttorney in Fact and Next Friend DENISE HOEY, prays for judgment against these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, in whatever amount in excess of the minimum jurisdictional limit of $25,000.00 (Twenty-Five Thousand Dollars) to which she is found to be entitled to at the time of trial, together with interest, costs, and/or attorneys fees.

## COUNT II
## BREACH OF CONTRACT

41.    That Plaintiff repeats and realleges each of the paragraphs of Count I above, as though fully set forth and at length, word for word, paragraph for paragraph.

42.    That the Residency Agreement and Program and Services description (Exhibit 1), executed with these Defendants and for and/or on behalf of DELPHINE KAISER constitutes a valid contract for services.

43.    That valuable consideration was paid for the services specified by, for or on behalf of DELPHINE KAISER.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

44.     That the Residency Agreement (Article VI) provides, "… the Community shall provide room, board, protection, supervision, assistance and supervised personal care and supervised personal care consistent with the Residence Service Plan.

45.     That DELPHINE KAISER's service plan called for base Reminiscence Program, and "Reminiscence Plus" and "Reminiscence Plus Plus" Programs, and "Enhanced Care" Programs, and delivery of the associated services delineated within the Residency Agreement and Program and Services Description contained therein.

46.     That by the act and/or omissions previously set forth and described, the Defendants breached the contract for services and/or Residency Agreement in failing to provide the bargained for consideration; specifically, the necessary protection, safety, security, supervision, observation, assistance, and/or supervised personal care consistent with the contract for services/Residency Agreement and Program and Services Description contained therein.

47.     That valuable consideration was given by, for or on behalf of Plaintiff DELPHINE KAISER and these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, failed to deliver the promised expectancy.

48.     That at the time the contract was entered into it was foreseeable that a material breach in providing these essential services for protection, safety and security would likely result in physical injury to DELPHINE KAISER.

49.     That there was a material breach of contract by these Defendants , SUNRISE SENIOR LIVING, INC.,  and/or G. P. WOODS ASSISTED LIVING, LLC, through the complained of acts and omissions previously set forth and described and your Plaintiff, DELPHINE KAISER suffered damages.

50.     That your Plaintiff, DELPHINE KAISER, performed and complied with all terms and provisions of said Residency Agreement and/or contract.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

14

51. That your Plaintiff, DELPHINE KAISER, paid valuable consideration to receive the benefit and/or expectancy of return as set forth in the Residency Agreement/Contract.

52. That the Plaintiff, DELPHINE KAISER otherwise fulfilled all contractual obligations incumbent upon her.

WHEREFORE for all of the above stated reasons Plaintiff DELPHINE KAISER, by and through her Atttorney in Fact and Next Friend DENISE HOEY, prays for judgment against these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, for compensatory and/or consequential damages, in whatever amount in excess of the minimum jurisdictional limit of $25,000.00 (Twenty-Five Thousand Dollars) to which she is found to be entitled to at the time of trial, together with interest, costs, and/or attorneys fees.

## COUNT III
## FRAUDULENT AND/OR NEGLIGENT MISREPRESENTATION

53. That the Plaintiff adopts by reference the preceding paragraphs of her Complaint set forth in Counts I and II as though fully set forth herein and at length word for word and paragraph for paragraph.

54. That the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC intentionally and/or negligently made the following false misrepresentations of fact to Plaintiff DELPHINE KAISER and/or the responsible family members acting on her behalf, thereby inducing them to contract and pay valuable consideration; to wit, that the Defendants would, could and were capable of providing that necessary room, board, protection, supervision, observation, assistance, and supervised personal care consistent with the (contract for services) Residency Agreement/Resident Service Plan as well as unparalleled and unique safety and security.

55. That the Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLCs, representations were false when they were made as they were made

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

15

in bad faith and/or without any intent, ability and/or capacity by these Defendants to perform, conform or deliver these promises and/or representations.

56.     That the misrepresentations of fact were material.

57.     That the material misrepresentations were made by the Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, with knowledge of their falsity and/or made recklessly without any knowledge of the truth of the representations and as a positive assertion.

58.     That the fraudulent, false and/or negligent misrepresentations of fact were indeed material, and were made with the intention that the representation should be acted on.

59.     That the Plaintiff DELPHINE KAISER and her responsible family members relied on the false and/or negligent misrepresentations of fact made by the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC.

60.     That as a result of the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLCs fraudulent and/or negligent misrepresentations, the Plaintiff DELPHINE KAISER has suffered substantial damages as previously set forth and described.

WHEREFORE for all of the above stated reasons Plaintiff DELPHINE KAISER, by and through her Atttorney in Fact and Next Friend DENISE HOEY, prays for judgment against these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, in whatever amount in excess of the minimum jurisdictional limit of $25,000.00 (Twenty-Five Thousand Dollars) to which she is found to be entitled to at the time of trial, together with interest, costs, and/or attorneys fees.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1569
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

## COUNT IV
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION STATUTE

61.   Plaintiff, repeats and realleges each of the paragraphs of Counts I, II and III above as though fully set forth herein at length, word for word, paragraph for paragraph.

62.   That the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC operating SUNRISE OF GROSS POINTE WOODS senior assisted living facility, and the Reminiscence program/community contained therein, were engaged in trade or commerce, in as much as their business/program, offered to provide to Plaintiff DELPHINE KAISER and her responsible family members acting on her behalf personal services, goods and/or property as that term is used or contemplated by the Michigan Consumer Protection Act, MCLA 445.901 *at Seq.*

63.   That the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC represented to DELPHINE KAISER and/or Plaintiff's family acting on her behalf that it offered, could provide and would deliver a unique and unparalleled program of services specifically tailored to vulnerable adult residents suffering from dementia, who were at risk for injury and/or exploitation, and consequently in special need of premium care services in the areas of physical assistance, ambulation, observation, monitoring and/or supervision, and which would culminate in safety and security at all times.

64.   That the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC's conduct and/or representations as previously set forth and described, including, but not limited to, those that pertain and/or relate to representations that it would and could provide that room, board, protection, supervision, assistance, observation and supervised personal care consistent with both statute and the contract for services/Residency Agreement and Program and Services Description contained therein, together with those additional care services in the form of extra personalized attention, assistance and staffing paid for through enhanced/extra care services/programs (and as part of the base Reminiscence Program, and "Reminiscence Plus" and "Reminiscence Plus Plus" Programs, and "Enhanced

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

17

Care" Programs, collectively referred to the Reminiscence program) and which Reminiscence program afforded unique and unparalleled safety and security to these vulnerable residents, among other written and verbal assurances given as to the quality and level of care, attention, supervision, observation, safety, security and/or protection from and against harm afforded to residents/participants of the Reminiscence Community/program, were knowingly false when made with these Defendants being incapable of delivering such services and/or otherwise unwilling to do so, as demonstrated by the acts and/or omissions previously set forth and described.

65. That Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC's conduct and/or such representations were prohibited by one or more provisions of the Michigan Consumer Protection Act in that they made representations that their goods or services had certain characteristics, benefits or qualities which it did not have ( MCLA 445.903(1)(C); MSA 19.418) , in failing to reveal a material fact the omission of which tends to mislead or deceive a consumer, and which fact could not reasonably be known by the consumer (MCLA 445.903(1) (s); MSA 19.418), in failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner (MCLA 445.903(1)(CC); MSA 19.418.0) among other violations.

66. That as to these claimed violations of the Act, Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC acted with knowledge or reason to know or with reckless disregard.

67. That the misrepresentations and/or failure to disclose by Defendant SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC pertained to material facts; one important to the transaction or one which the Defendants knew or should have known would influence and induce the Plaintiff DELPHINE KAISER and her responsible family members acting on her behalf in entering into the transaction (specifically--assurances as to level

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

18

and quality of care, supervision, observation, assistance, attention, safety, security and/or protection from and against harm that would be afforded to residents of SUNRISE OF GROSS POINTE WOODS senior assisted living facility and as part of the Reminiscence program/community therein).

68. That in fact those the misrepresentations and/or failure to disclose by Defendant SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, did influence, cause and/or induce the Plaintiff DELPHINE KAISER and her responsible family members acting on her behalf to enter into the transaction and purchase the goods and/or services.

69. That additionally, or in the alternative, MCLA 445.903(1) specifically prohibits these Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, operating a business such as SUNRISE OF GROSS POINTE WOODS, from engaging in unfair, unconscionable and/or deceptive acts, methods or practices in the operation of an assisted living facility/community targeting senior citizens such as Plaintiff DELPHINE KAISER as residents.

70. That MCLA 445.903(1)(a) specifically prohibits these Defendants from engaging in practices which cause a probability of confusion or misunderstanding with regard to the type of services it is capable of providing to a person situated as Plaintiff, DELPHINE KAISER and/or responsible family members acting on her behalf.

71. That the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING violated MCLA 445.903(1)(a) by making representations about the levels of services it would and could provide to Plaintiff as set forth and described previously when, indeed, it had no intention to provide and/or was incapable of delivering the services marketed and sold including, but not limited to, the providing of that necessary and increased protection, supervision, assistance and/or supervised personal care consistent with the Residency Agreement and Program Services Description applicable in this case.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

19

72.     That such statements would cause a probability of confusion or misunderstanding in the mind of a reasonable consumer situated as Plaintiff DELPHINE KAISER and/or DELPHINE KAISER'S family acting on her behalf who were expecting both the capability and delivery of such services and/or protection.

73.     That as a direct and proximate result of the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING violations of the Michigan Consumer Protection Act, Plaintiff DELPHINE KAISER and her responsible family members acting on her behalf were lead to believe that she could reside at Defendant's facility known as SUNRISE OF GROSS POINTE WOODS, and the Reminiscence community/program therein, safely and securely, thereby causing Plaintiff, DELPHINE KAISER to continue to remain and reside as a resident of Defendant's facility/community, unaware that it was in actuality unsafe for her to do so, thereby subjecting and exposing her to unreasonable risks of harm and/or injury which did thereafter materialize and operate injure her in the manners previously set forth and described.

WHEREFORE for all of the above state reasons Plaintiff DELPHINE KAISER, by and through her Atttorney in Fact and Next Friend DENISE HOEY, prays for judgment against these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, for such damages as she is entitled to under the Michigan Consumer Protection Act including, without limitation, actual damages, declaratory relief and/or reasonable attorneys fees.

## COUNT V
## VIOLATION OF CIVIL RIGHTS (ELLIOT-LARSON)

74.     That the allegations of the preceding paragraphs and Counts I, II & III, and IV are repeated, realleged, and reincorporated by reference as though fully set forth at length, word for word, paragraph for paragraph.

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726

A PROFESSIONAL LIMITED
LIABILITY COMPANY

20

75.     That the Elliot-Larsen Civil Rights Act provides that a person shall not deny a person the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation or public service because of sex.

76.     That pursuant to the Elliot-Larsen Civil Rights Act, discrimination because of sex is prohibited (MCL §37.2103.) and pursuant to statute, and interpretive case law, discrimination because of sex includes sexual harassment.

77.     That prohibited sexual harassment is defined as: unwelcomed sexual advances, request for sexual favors, and other verbal or physical conduct or communication of a sexual nature when: (i) submissions to such conduct or communication is made a term or condition, explicitly or implicitly to obtain public accommodation, public service or education, or (ii) submission to the conduct or communication by and individual is used as a factor in decisions affecting the individual's public accommodation, public services or education. (MCL §37.2103)

78.     That at all times relevant, SUNRISE OF GROSS POINTE WOODS constituted a place of public accommodation and/or public service to which the Elliott Larsen Civil Rights Act applied.

79.     That Defendant SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, and by and through their employees, caused and/or permitted the prohibited sexual harassment by Mr. Wattles as previously set forth and described in this Complaint, which had the purpose or effect of substantially interfering with DELPHINE KASIER'S receipt of public accommodation and/or public services.

80.     That additionally, or in the alternative, the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, and by and through their employees, which caused and/or permitted the prohibited sexual harassment by Mr. Wattles as previously set forth and described in this Complaint, created a hostile environment that

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

21

substantially interfered with DELPHINE KAISER'S receipt of public accommodations and/or public services.

81. That there was a failure to timely remediate and/or remove/transfer Mr. Wattles by the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, upon receipt of actual and/or constructive knowledge and/or notice of prior instances of inappropriate sexual misconduct by Mr. Wattles perpetrated on DELPHINE KAISER, other residents of SUNRISE OF GROSS POINTE WOODS and/or Defendant's staff, and/or upon receipt of such other information that would indicate he was unfit and/or unsafe to reside in and/or remain in the same Sunrise Community with vulnerable adult female dementia patients, such as DELPHINE KAISER.

82. That foreseeably one of the patients/residents of the Sunrise Community, in this case, DELPHINE KAISER, was subjected to that physical and emotional harm and/or injury through the ongoing and/or escalating sexual harassment, wrongdoing and misconduct at the hands of Mr. Wattles and/or Defendants SUNRISE SENIOR LIVING, INC. and/or G. P. WOODS ASSISTED LIVING, LLC which caused or allowed same to occur and/or continue.

83. That additionally, or in the alternative, the nature, extent and duration of Mr. Wattles sexually harassing misconduct was such that the Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, had actual and/or constructive notice of the hostile environment created by Mr. Wattles' wrongdoing and/or misconduct.

84. That Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, violated Plaintiff DELPHINE KAISER'S civil rights by requiring her to submit to, endure and/or otherwise causing her to be sexually harassed, on one or more occasions, including, but not limited to, that contact of a sexual nature as previously set forth and described in this Complaint, which became terms, conditions and/or factors in Plaintiff

THE
SAM BERNSTEIN
LAW FIRM
31731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669
(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

22

DELPHINE KAISER'S right to obtain public accommodation and/or public services from these Defendants within SUNRISE OF GROSS POINTE WOODS.

85.     That as a direct and proximate result of Defendants SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLCs, wrongdoing, by and through their employees and/or agents, DELPHINE KAISER has suffered those injuries and damages, both physical and emotional, previously set forth and described in this Complaint.

WHEREFORE for all of the above stated reasons Plaintiff DELPHINE KAISER, by and through her Atttorney in Fact and Next Friend DENISE HOEY, prays for judgment against these Defendants, SUNRISE SENIOR LIVING, INC., and/or G. P. WOODS ASSISTED LIVING, LLC, in whatever amount in excess of the minimum jurisdictional limit of $25,000.00 (Twenty-Five Thousand Dollars) to which she is found to be entitled to at the time of trial, together with interest, costs, and/or attorneys fees.

## JURY DEMAND

NOW COMES the Plaintiff by and through their attorneys, THE SAM BERNSTEIN LAW FIRM, by STNALEY J. FELDMAN, and hereby respectfully demands a trial by jury in the above-entitled cause of action.

Respectfully submitted,

THE SAM BERNSTEIN LAW FIRM

STANLEY J. FELDMAN (P52123)
Attorney for Plaintiff
31731 northwestern Hwy, Suite 333
Farmington Hills, MI 48344
(248) 538-3147
(248) 538-3142 Legal Assistant

THE
SAM BERNSTEIN
LAW FIRM
1731 NORTHWESTERN HIGHWAY
SUITE 333
FARMINGTON HILLS,
MICHIGAN 48334-1669

(800) 225-5726
A PROFESSIONAL LIMITED
LIABILITY COMPANY

Dated: June 15, 2011

23

# Residency Agreement
## Sunrise of Grosse Pointe Woods



PLAINTIFF'S
EXHIBIT
1

## *RESPITE STAY ADDENDUM*

THIS RESPITE STAY ADDENDUM (this "Addendum") is entered into as of this _1_ day of _May_____, 200_9_, by and between: (i) Sunrise an (ii) _Delphine Kaser / Ralph Kaiser_____ ("you" or "Resident"). _Resident_                   _Spouse (POA)_

WHEREAS, the Resident desires to reside at the Community for a period of less than one (1) year on a respite stay (the "Respite Stay"); and

WHEREAS, the Resident and the Community have entered into a Residency Agreement dated ___May 1_____,20_09_ (the "Residency Agreement"), as amended herein.

NOW THEREFORE, the Resident and the Community agree as follows:

1.      Article IV.A. of the Residency Agreement is hereby amended as follows: The initial one (1) year term of the Residency Agreement shall not apply to the Resident while on a Respite Stay. Resident shall reside at the Community for the period commencing on _May 1_____, 200_9_ and terminating no later than _May 15_____, 20_09_.

2.      The Community Fee referred to in Article III.B. of the Residency Agreement shall be waived during the Resident's Respite Stay.

3.      Article III. of the Residency Agreement is amended to add the following:

> L.  <u>Respite Stay Daily Fee.</u> During the Respite Stay, the Resident shall pay a daily fee in the amount of $_176_ (the "Respite Stay Daily Fee").

4.      In the event that Resident becomes a permanent resident of the Community, Resident shall be responsible for payment of the Community Fee upon the first day of such permanent residency. Resident's Community Fee shall be credited by the amount of the Respite Stay Daily Fee paid pursuant to Paragraph 3 above, for a maximum of sixty (60) days. For example, if the Resident pays a Respite Stay Daily Fee of $10.00 for a Respite Stay of 60 days, the Resident will receive a credit of $600.00 to the Community Fee. If the Resident's Respite Stay is 45 days, the credit will equal $450.00

5.      Except as modified herein, all of the other terms and conditions of the Residency Agreement remain in full force and effect.

12076_1.DOC

IN WITNESS WHEREOF, the parties have executed this Addendum effec ve as of the date first written above.

SUNRISE

_____
Signature

_____
Title

_____
Date

Executive Direct'r

4/30/0?

RESIDENT

_____
Signature

_____
Print Name

_____
Date

RESPONSIBLE PARTY

_____
Signature

_____
Print Name

_____
Date

4/30/07.

12076_1.DOC

## Residency Agreement
## Sunrise of Grosse Pointe Woods
21260 Mack Avenue
Grosse Pointe Woods, MI 48236

THIS RESIDENCY AGREEMENT ("Residency Agreement") is mac e and entered into this _____ day of __May__, _2008_ ("Effective Date") by and be ween:

(i)  G.P. Woods Assisted Living, L.L.C. ("Owner") acting throug t its manager, Sunrise Senior Living Management, Inc. ("Sunrise") d/b t Sunrise of Grosse Pointe Woods (the "Community"), and

(ii)  _Delphene Priser_ | _Ralph Kaiser (PO)_ ("you" or "Resident"). (If more than one person enters into t is Residency Agreement, the word "you" as used herein shall include both p ersons unless otherwise stated.)

The Community is licensed as a Home for the Aged by the Michigan I epartment of Human Services, Office of Children and Adult Licensing. The Community is managed by Sunrise. Sunrise's corporate address is 7902 Westpark Drive, McLean, Virginia 22 02. Sunrise can be contacted at (888) 434-4648.

Programs, products and services available at this Community include:

- Assisted Living
- ✓ Reminiscence Neighborhood
- ✓ Medication Management
- ✓ Continence Care
- ✓ Respite Care
- ✓ Enhanced Care

Notes (please initial and date):

_____

_____

_____

_____

26929_1.DOC

Revised 7/1 07

You acknowledge that the Community has explained the terms of this Residency Agreement to you. You agree to the terms of this Residency Agreement by signing in the space provided below:

**RESIDENT:**

_____
Signature

_____
Print Name

**RESPONSIBLE PARTY:**

_~~Ralph Kaiser~~_____
Signature

_Ralph Kaiser_____
Print Name

**SECOND RESIDENT (if applicable):**

_____
Signature

_____
Print Name

**RESPONSIBLE PARTY:**

_____
Signature

_____
Print Name

**SUNRISE:**

_____
Signature

_____
Executive Director

*Please also execute all of the Exhibits to this Residency Agreement.*

MI AL Care RA

## PREAMBLE

The purpose of this Residency Agreement is to provide a statement of the s rvices that will be provided to you and the legal obligations that the Community will be assu ing. This Residency Agreement also sets forth your obligations to the Community, both financi l and non-financial. Your residence is identified by suite number in Exhibit 1 of this Residency Agreement. You may move into your suite (the "Suite") as of the date (t'10 "Occupa cy Date") listed in Exhibit 1.

## ARTICLE I
### Resident Evaluation

A.    **Qualification for Residency.** The Community may only accept or retain an individual to be a resident if management determines, in its sole discretion, it is able 5 provide appropriate services and the individual meets the requirements set forth by state law. The Resident is subject to the Community's policies on health screening including, but not imited to annual tuberculosis testing. The Community is not required to admit or retain the Resi ient or to contract with the Resident for services, if the Community determines, in its sole discret n, that it cannot meet the Resident's needs or the Resident fails to meet the requirements as se forth by law.

B.    **Physician's Report.** Prior to move-in, the Resident will provide the C(nmunity a completed Physician's Report (the "Physician's Report") on a form provide by the Community. This Report will include a physical examination conducted within thirty 30) days prior to move-in and must demonstrate that the Resident meets criteria for residenc . After move-in, the Community may require a Physician's Report, acceptable to the Co munity, following any hospitalization, when the Community determines that the Resident t health condition warrants, and as required by law.

C.    **Psychiatric Examination.** In addition to the Physician's Report, the Co: munity may require a report of a current psychiatric examination (the "Psychiatric Examinatio ') prior to move-in if the Resident is taking psychotropic drugs, or has a history of aggressive t havior, to determine if the Resident's needs can be met in an Assisted Living Program and to ass t in the Resident's care plan. After move-in, the Community may require a psychiatric con: ıltation when the Community, along with the Resident's personal physician, determines nat the Resident's health condition warrants. Failure to comply with the request for a consultati n after move-in may result in a termination of this Residency Agreement.

D.    **Assessment.** The level of assisted living services required by the Res dent is determined through an assessment ("Assessment") of the Resident completed by a ! censed nurse.

The Assessment is performed when the Resident desires to move into the Com 1unity, and is performed again (i) when additional assisted living services may be needed, (ii) u on the Resident's change in condition or (iii) upon a Resident's return from the hospital or otł ¡r care facility. The Resident, his/her family, and any Responsible Party named in this Re; dency

MI AL Core RA

Agreement will be informed of changes in the Resident's condition and any additi nal assisted living services needed, and are encouraged to participate in the review, assessment, e id care plan process.

The Assessment is performed by designated team members and includes an e nluation of each Resident's specific needs. It covers areas such as: mobility, skin care, eating abits, oral hygiene, continence, cognitive behavior, and medication. This Assessment, alor g with the Physician's Report, provides the basis for identifying the Resident's S rvice and Medication Levels.

E.  **Resident Service Plan.**  A service plan will be developed bas d on the Physician's Report, the Psychiatric Examination (if applicable) and the Assessr ent. The Resident's service plan will be developed with the Resident and/or any individual tl s Resident designates, including any Responsible Party. The service plan will outline the s rvices the Resident is to receive and shall be updated annually or more frequently as necessar to reflect service needs.

F.  **Change in Resident's Condition.**  If the Resident's condition changes o that the previously assessed level of services is no longer appropriate, the Community will rec aluate the Resident's needs to determine which level of service is appropriate and r stify the Resident/Responsible Party of such reevaluation. The rate charged will vary accordi ng to the level of service provided. Should the Resident wish to decrease the services recei ed, prior approval from the Community is required. Changes in services provided will be refl cted in a revised service plan.

G.  **Notification of Third Parties.**  In the event that the Resident requires e lergency services or experiences a significant change in condition, the Community will attempt > contact the Responsible Party or other individual designated by the Resident, immediately. The Resident is responsible for ensuring that the Community has current telephone numbers for the in lividuals to be notified.

## ARTICLE II
### Responsibilities and Representations of the Resident

A.  The Resident will use the Suite only for residential dwelling p irposes.

B.  Smoking is not allowed in any Resident Suite. Smoking is only all wed in designated "Smoking Areas." Whether to designate any Smoking Areas is within he sole discretion of the Community. The Community may require residents to be supervis I when smoking.

C.  A live-in companion is considered an additional person living in the Suit and is required to pay the Base Fees associated with the Resident's Suite.

D.  Resident agrees to maintain the Suite in a clean, sanitary and orderly co dition. Resident will reimburse the Community for the repair or replacement of furnishings and ixtures in the Suite beyond normal wear and tear. In addition, Resident will reimburse the Con nunity

MI AL Core RA

for loss or damage to real or personal property of the Community caused by acts or the negligence or willful misconduct of the Resident or the Resident's agents, guests, or invitees.

E.    Any damage to carpeting in the Resident's Suite, other than normal wear and tear, including stains and/or odors due to incontinence or pets, will result in the carpet being professionally cleaned, repaired or replaced by the Community. The Community will have the right to determine whether the carpet needs to be repaired, cleaned, or replaced. The Resident shall be responsible for the cost of the repairing, cleaning, or replacing the carpet.

F.    The Resident will not alter or improve the Suite without the prior written consent of the Community. Upon the termination of this Residency Agreement, the Resident will be required to return the Suite to the original condition at his/her own expense prior to the expiration of any applicable notice periods.

· G.    The Resident will notify the Community promptly of any defects in the Suite, common areas or in the Community's equipment, appliances, or fixtures.

H.    Community employees or agents may enter the Suite at any reasonable time in order to provide services to the Resident, to perform building inspection and maintenance functions, to show the Suite to prospective residents, with the Resident's permission, and otherwise to carry out the Community's obligations under this Residency Agreement. Resident shall allow entry into the Suite at any time to the Community's employees or agents when they are responding to the medical alert system, fire alert system or other emergency. Community personnel will respect the Resident's privacy and make their presence known (except in an emergency) when entering the Suite and will schedule the entry in advance whenever possible.

I.    The Resident will vacate the Suite at the termination of this Residency Agreement, remove all of the Resident's property, and deliver possession of the Suite and any furniture, equipment, appliances, and fixtures supplied by the Community, to the Community in good condition, ordinary wear and tear excepted. The Resident will pay the cost of removing and storing any property of the Resident remaining in the Suite after the termination of this Residency Agreement.

J.    The Resident will comply with all guidelines established by the Community regarding resident conduct in the Community (the "Community Guidelines"), which shall be deemed incorporated herein. The Community Guidelines may be amended from time to time as the Community determines to be appropriate.

K.    The Resident will not keep a dog, cat, bird, fish, or other pet of any kind in the Suite unless the Resident and Community have executed the Pet Addendum, available upon request.

L.    If at any time the Resident wishes to use a motorized vehicle he/she must execute a Motorized Vehicle Addendum, available upon request.

M.    The Resident agrees to maintain his/her own personal physician.

MI AL Core RA

N. The Resident and Responsible Party understand and agree that the Executive Director or designee may restrict an individual's visitation rights or bar an individual from entering the Community if it is determined that the individual is disrupting the care of the Resident, the care of other residents or if the presence of the individual has a negative effect on a resident's physical or psychosocial well being.

## ARTICLE III
### Financial Arrangements

A. **Fees.** The Resident will pay to the Community the fees indicated on Exhibit 1, and any Additional Amenities provided to the Resident at the fees indicated on Exhibit 3.

B. **Community Fee.**

1. The Resident will pay to the Community a one-time fee (the "Community Fee") in an amount indicated on Exhibit 1, subject to the provisions of this Article III. B.

2. If the Resident has previously paid a Community Fee to the Community, the Community Fee due upon the execution of this Residency Agreement is the Community Fee established for the Suite less the Community Fee previously paid. If the Community Fee previously paid is greater than the Community Fee currently established for the Suite, no additional Community Fee will be due, and no portion of the Community Fee previously paid will be refunded.

3. The Community Fee is non-refundable, except as specifically provided in this paragraph or in the Community Fee Addendum. The Community Fee is not a security deposit and is not intended to secure the performance of any obligation of the Resident under this Residency Agreement.

a) If this Residency Agreement is terminated prior to the Resident taking possession of the Suite or receiving any of the Assisted Living Program Services, the Community will refund the Community Fee paid under this Residency Agreement less the administrative charge set forth in Exhibit , unless the move-in does not take place for physician documented medical reasons, in which case the entire Community Fee will be refunded.

b) In the event the Resident terminates the Residency Agreement after move-in, the Community Fee will be refunded pursuant to the terms of the Community Fee Addendum attached hereto.

C. **Special Assessments.** The Community reserves the right to assess charges for special circumstances outside the Community's control, such as sharp increases in costs of utilities or other necessary expenses. The Community shall provide the Resident at least thirty (30) days' written notice (or such additional days' notice as may be required by law) prior to the imposition of such special assessments.

6

MI AL Core RA

**D.** **Payment Schedule and Monthly Statement.** Prior to or on the Occu ancy Date, the Resident shall pay the Community an amount equal to the Total Daily Fee et forth in Exhibit 1, multiplied by the number of days in that month. This paym ent shall b applied to Resident's first month's residence in the Community. If the Occupancy Date is on t day other than the first day of the month, the advance payment shall be prorated accordin ly and the residual amount will be credited to the following month's payment. Thereafter, tho 'ommunity will provide to the Resident a monthly statement itemizing fees and charges an payments received, and showing the balance due. The monthly statement will aggregate daily fees into a monthly amount, which shall be due in advance, on the first (1ˢᵗ) calendar day of each month.

**E.** **Late Payment Charge:** If the Resident's account is not paid in full by the first of the month, a late payment charge will be assessed on the outstanding balance of on t and one-quarter percent (1¼%) per month until paid. This periodic rate is equivalent to an annual percentage rate of fifteen percent (15%). The Resident will pay all costs and expense including reasonable attorneys' fees and court costs, incurred by the Community in collecting at ounts past due under this Residency Agreement.

**F.** **Increases in Fees and Charges.** The Community shall increase the I ase Fee in Exhibit 2 on January 1ˢᵗ of each year. Notice of any increase in the Schedule of Fees ( so Exhibit 2) will be provided to the Resident in writing thirty (30) days prior to the effective ate of the increase. The Resident will pay all applicable new or increased fees and charges, inless the Resident terminates this Residency Agreement in accordance with Article IV of this Residency Agreement, effective prior to the effective date of the fee or charge increase. If the C ommunity agrees at the request of the Resident to provide additional services or to expand servi 2s beyond those currently being furnished to the Resident, no advance notice requirement will a ply to any fees or charges relating to such services.

A change in the level of service (for example, a change from Assisted Livi g Base to Assisted Living Plus) is not considered a change of fees or charges. The Reside t shall be responsible for the cost of increased level of service when he/she begins recei ing such services.

**G.** **Meal Credits.** In the event that the Resident is absent from the Suite fr a period in excess of seven (7) consecutive calendar days, the Community will credit the tesident's account a daily amount (the "Meal Credit") as indicated in Exhibit 2, for each day after the seventh day that the Resident is absent.

**H.** **Additional Assisted Living Services/Products Credit.** In the even that the Resident is absent from the Community for a period in excess of three (3) consecutiv calendar days, the Community will credit the Resident's account a daily amount as indicated in xhibit 2, for each day after the third consecutive day that the resident is absent. The Resident w ll remain responsible for the fees associated with the additional assisted living services/product listed on Exhibits 3 for the first three days of each period of absence.

**I.** **Double Occupancy.** If two individuals are parties to this Residency A recment, a second person occupancy fee, as listed in Exhibit 1-A, shall be applied. Both Resid nts shall be jointly and severally liable for all fees and charges incurred by each Resident. V hen two

11796_1.DOC                                     7                          Revised 5/8/07

MI AL Core RA

persons are parties to this Residency Agreement, and when one such person permane tly vacates the Suite, the remaining resident shall have the option of:

- Retaining the same Suite, with the understanding that a prospecti e resident may select that Suite for double occupancy; or

- Retaining the same Suite and paying the fee applicable to private ccupancy; or

- Relocating to a single occupancy Suite, if available.

**J.** **Suite Hold Policy.** In the event that the Resident is absent from the C mmunity for any reason, the Resident will be required to pay the Base Fee, as it becomes du , less any credits to which the Resident is entitled under this Residency Agreement. The I esident is responsible for all charges and fees until this Residency Agreement is terminated in accordance with Article IV.

**K.** **Refund Upon Closing.** In the event the Community ceases to op rate, the Resident will be entitled to a pro rata refund of any amounts paid under the esidency Agreement for services for that period after which the Community has closed.

## ARTICLE IV
## Term and Termination

**A.** **Term of Residency Agreement.** This Residency Agreement shall com ience on the Effective Date and will continue on a month-to-month basis, unless the esidency Agreement is terminated as provided below herein.

**B.** **Termination.** The Community may terminate this Residency Agreeme prior to the expiration of its term, upon thirty (30) days' prior written notice ("Communi Notice Period") to the Resident and the Responsible Party for one of the following re sons, as determined by the Community:

**1.** The Resident:

a) Does not meet the residency requirements established by t e state;

b) Needs 24-hour nursing care, seven days per week;

c) Requires intensive nursing care;

d) Requires nursing care beyond that proved by a hom health agency;

e) Has a communicable disease;

f) Requires treatment of stage 3 or 4 pressure sore or multipl stage 2 pressure sore;

MI AL Core RA

g) Presents an imminent physical threat or danger to self or others;

h) Fails to pay fees and charges when due, or breaches any representation, covenant, agreement, or obligation of the Resident under this Residency Agreement;

i) Fails to accept additional services when it is in the best interest of the Resident to have these services provided to him/her;

j) Has health care needs that cannot be met in the Community, for reasons such as licensure, design or staffing, as determined by the Community;

k) Fails to comply with the Community Guidelines;

l) Is habitually disruptive, creates unsafe conditions, or is physically or verbally abusive to other residents or staff; or

2. The Resident's family, guardian, Responsible Party, or guest is habitually disruptive, creates unsafe conditions, or is physically or verbally abusive to the detriment of the welfare of the Resident, other residents or staff; or

3. The Resident's personal physician has determined that the Resident needs other services, not available at the Community; or

4. The Community is closed.

Notwithstanding the foregoing, the Community may terminate this Residency Agreement for health or safety reasons, consistent with state law or in the event of a Community emergency or a Resident emergency, as determined by the Community. If this Residency Agreement is terminated for these reasons, the Community will not be required to provide prior written notice.

C. **Termination by Resident.** The Resident may terminate this Residency Agreement, upon thirty (30) days' prior written notice to the Community ("Resident Notice Period"), for any reason. In the event of the death of the Resident, this Residency Agreement will terminate on the first full day after all articles are removed from the Suite. In the event of a medical emergency, as determined by Sunrise, this Residency Agreement shall terminate effective fourteen (14) calendar days after Sunrise receives notice, provided all articles are removed from the Suite by that date.

D. **Refunds.**

1. In the event the Community terminates this Residency Agreement and the Resident vacates the Suite before the Community Notice Period is over, the Community shall refund the Resident a prorated amount of the paid Base Fee and the Additional Assisted Living Services Fees for the unused portion of the Community Notice Period.

2. In the event the Resident terminates this Residency Agreement, the Resident will be liable for all charges accrued or incurred for the entire length of the

11796_1.DOC                    9                    Revised /8/07

MI AL Core RA

Resident Notice Period, regardless of whether the Resident vacates the Suite prior to the expiration of the Resident Notice Period.

E.   **Removal of Personal Property.** Upon termination of this Residency Agreement, the Resident's personal property must be removed from the Suite. The Community shall continue to assess, and the Resident will be required to pay, the base Fee on a prorated basis until the personal property is removed from the Suite.

## ARTICLE V
## Miscellaneous Provisions

A.   **Choice of Accommodations.** In the event that the suite of the Resident's choice is not immediately available, an alternate suite will be made available and the Resident will be charged the rate customarily associated with such suite. Once the Resident's desired suite becomes available the Resident will be allowed to move into the desired suite in accordance with the Community's policy and the rate set forth in Exhibit 2, will apply.

This Community provides different levels of care in designated neighborhoods. If in the sole discretion of the Community it is determined that there has been a change in our level of care, You agree to relocate to another suite and neighborhood in the Community, subject to availability.

B.   **Grievance Procedure.** The Community's Grievance Procedure is set forth in Exhibit 4.

C.   **Insurance.** The Resident is responsible for maintaining at all times his or her own insurance coverage, including health, personal property, liability, automobile (if applicable), and other insurance coverages in adequate amounts. This includes renter's insurance. The Resident acknowledges that neither Sunrise nor the Owner is an insurer of the Resident's person or property.

D.   **Maintenance and Repairs.** The Resident acknowledges that he or she has had an opportunity to inspect the Suite and the Resident accepts the Suite in its "as is" condition. The Community will deliver and maintain the Suite in a fit and habitable condition and will maintain all common areas in a clean and structurally safe condition, and will maintain all equipment, appliances, and fixtures, other than the personal property of the Resident and all electrical, plumbing, heating, ventilating, and air conditioning equipment in good and safe working order and condition. Temporary interruption of such utility services may occur periodically due to factors outside of the Community's control or due to repairs, maintenance or replacement of equipment.

E.   **Notices.** Any notices to be given under this Residency Agreement will be deemed to have been properly given when delivered personally or when mailed by first class mail, postage prepaid, addressed as follows:

1.   If to the Resident: addressed to the Suite or to such other address as the Resident may designate by notice.

MI AL Core RA

2. If to the Community: addressed to the Executive Dire or of the Community or to such other address as the Community may designate in writi g.

F. **Assignment.** The Resident's rights under this Residency Agreement : e personal and cannot be transferred or assigned. The rights and obligations of the Commur ty may be assigned to any person or entity, which person or entity will be responsible that the ob igations of the Community under this Residency Agreement are satisfied in full from and after t e date that the Resident is notified of such assignment. The Community may engage anothe person or entity to perform any or all of the services under this Residency Agreement.

G. **Ownership Rights.** The Resident has no ownership interest or propr tary right to the Suite, nor to the personal property, land, buildings, improvements or other C ommunity facilities provided under this Residency Agreement. This Residency Agreement sl ill not be construed to be a lease or to confer any rights of tenancy or ownership in the Resi ent. The Resident's rights under this Residency Agreement are subject to all terms and con itions set forth herein and subordinate to any mortgage, financing deed, deed of trust, or financir ; lease on Community premises. Upon request, the Resident agrees to execute and deliver any i strument requested by the Community or the owner or holder of any such document to affec the sale, assignment, or conveyance thereof, provided that by so doing the Resident shall not b required to prejudice his/her rights under this Residency Agreement.

H. **Guests.** The Resident's guests shall at all times abide by the Con munity's policies, including the Community Guidelines. The Community reserves the right t bar any guest from the Community if the guest is determined by the Community to be a thr it to the Resident or other residents, interferes with residents' care, and/or is abusive to st ff. The Resident shall be responsible for the charges incurred by and actions of any guest. The Lesident may have guests stay overnight in the Suite, in accordance with the Community Guidelin s.

I. **Weapons.** For the safety and well-being of all residents and staff, eapons, including, but not limited to guns and knives, are not to be brought into the Communi ; at any time. This policy applies to Resident guests as well.

J. **Arrangement for Guardianship or Conservatorship.** If it appears at you may not be able to care properly for yourself or your property, and if you have made o other designation of a person or legal entity to serve as guardian or conservator then Sunrise m y apply to a court of law to appoint a legal guardian or conservator. Alternatively, if other pers as seek appointment as your legal guardian or conservator, Sunrise may be required to participate in such proceedings. You agree to pay all attorney's fees and costs incurred by Sunrise in cor lection with such action(s).

K. **Resident Rights.** The Resident and Responsible Party(s) have been ad sed of and have received a copy of the "Statement of Resident Rights," which is attached as E hibit 5 and made part of this Residency Agreement.

L. **Admission Policy.** Residents are admitted to the Community without re ard to race, color, creed, national origin, sex, religion or handicap.

MI AL Core RA

**M.    Assurance of Confidentiality.**    The Community acknowledge that the Resident's personal and medical information are confidential. The Community sh ll maintain the confidentiality of the Resident's personal and medical information in compliance with state and federal law.

**N.    Examination of Records.**    A representative of the agency resp nsible for licensing the Community, or any agency acting under its guidance, may inspect the Resident's records that are on file at the Community as a part of their evaluation of the Communi y.

**O.    Amendment.**    Subject to any provision of this Residency Agreem nt to the contrary, no modification, amendment, or waiver of any provision of this Residency greement will be effective unless set forth in writing and signed by the Sunrise Senior Vice P esident of Operations for the Region and the Resident.

**P.    Entire Agreement.**    This Residency Agreement, including the Exhi ts hereto, constitutes the entire agreement between the parties and it supersedes all prior oral r written agreements, commitments, or understandings with respect to the matters provided for t rein.

**Q.    Waiver.**    Neither delay nor failure in requiring strict compliance by the Resident with any of the terms of this Residency Agreement shall be construed to be a wai er by the Community of such term, or of the right to insist upon strict compliance by the Residen with any of the other terms of this Residency Agreement.

**R.    Severability.**    If any provision of this Residency Agreement is found valid or otherwise unenforceable, the other provisions of this Residency Agreement shall remai binding and enforceable.

**S.    Governing Law.**    This Residency Agreement, its construction, perform nce, the obligations and duties of the parties, and any claims or disputes arising from it will be overned by and construed in accordance with the laws of the state in which the Community is loc ted.

**T.    Accuracy of Application Documents.**    As part of the Resident's appli ation to the Community, the Resident has filed with the Community an application form. The Resident warrants that all information contained in these documents and any other document su plied to the Community as part of the application process is true and correct, and the Resident understands that the Community has relied on this information in accepting the Res lent for residency at the Community. Any misrepresentation or omission made by the Resident r on the Resident's behalf, whether written or verbal, shall be grounds for the Community's termi ation of this Residency Agreement upon thirty (30) days prior written notice to the Resident.

**U.    Advance Directives.**    It is the policy of the Community to ask all pro pective residents if they have executed any "advance directives." Advance directives can in lude a health care power of attorney, a living will, or other documents which describe the amou t, level or type of health care the Resident would want to receive at a time when the Resident can no longer communicate those decisions to a doctor or other health professional. It also i cludes documents in which the Resident names another person who has the legal authority make health care decisions for the Resident. If the Resident has executed any such documen t, or if the Resident executes any such documents while living at the Community, it is the Re dent's

MI AL Core RA

responsibility to advise the Community's staff of these documents, and to provide copies to the Community. If the Resident has such documents, and has provided copies of them to the Community, the Community will provide copies of the documents to other health care professionals who may be called to assist the Resident with his/her health care needs. If the Resident executes such documents, and later changes or revokes them, it is the Resident's responsibility to inform the Community, so that the Community can assist the Resident in communicating the Resident's health care choices to other professionals.

V. **Review of Documents and Policies.** The Resident and the Responsible Party named in this Residency Agreement acknowledge(s) that they have received copies of and have reviewed, this Residency Agreement between the Community and the Resident and exhibits. The Resident and the Responsible Party further acknowledge(s) that the Community has explained to him/them the Community's policies and procedures for implementing residents' rights and responsibilities, including the grievance procedure (attached as **Exhibit** ) and the Resident has been offered the opportunity to execute advance directives.

W. **Responsibility for Third Party Contractors/Health Services.** The Resident has the right to receive services from third-party contractors consistent with the Community's policies and state law. All third-party contractors must comply with the Community's rules and policies. The Community has no responsibility to screen third party contractor and the Community is not responsible for care provided by third-party contractors to the Resident. The Resident shall hold harmless and indemnify the Community and its owners, directors, agents, employees and contractors against any losses, costs, expenses, claims, liabilities, damages, or judgments, including without limitation, legal fees, court costs, expert fees, and similar expenses incurred, which may be asserted against, imposed upon or incurred by the other party as a result of the negligence or intentional conduct of the third-party contractor. The Community reserves the right to bar any third-party contractor from the Community.

The Resident hereby indemnifies, holds harmless and releases the Community and its owners, directors, agents, employees, and contractors from any and all liability, cost, and responsibility for injury and damage, including attorneys' fees, arising from the Resident's failure to obtain, or from the failure of others to furnish, nursing, health care or personal care services, and from all injury and damages which could have been avoided or reduced if such services had been obtained or furnished or as a result of the Resident/Responsible Party's negligence, intentional wrongdoing or breach of his/her contractual obligations.

### ARTICLE VI
### Services Available to Residents at the Community

A. **Services Available at the Community.** The services and programs described in the following pages of this Residency Agreement are available to residents, as determined by the Community following the Assessment process described in Article I. Pursuant to R325.1922 of the Michigan Homes for the Aged Regulations the Community shall provide room, board, protection, supervision, assistance, and supervised personal care consistent with the resident's service plan.

MI AL Core RA

**B.** **Services Not Provided by The Community.** The Community does not provide any services not described in this Residency Agreement. However, certain services such as eyeglasses, dentures, podiatric care, psychiatric consultation, physical therapy, speech therapy, and occupational therapy, private duty care givers, prescription medications, physician services, prosthetic devices and mechanical aides in some cases may be arranged through the Community. Any such services and items will be billed to the Resident by the third party provider.

**C.** **Emergency Services.** The Resident authorizes the Community to obtain emergency health care services for the Resident, at the Resident's expense, whenever, in the Community's sole discretion, such emergency services are deemed necessary. The Community shall notify any Responsible Party, as soon as possible after such emergency where health care services have been provided.

**D.** **Transfer to Facility Providing Higher Level of Care.** If the Resident needs care beyond what can be provided in the Community, the Resident and any Responsible Party shall, upon written notification from the Community, make arrangements for transfer to an appropriate care setting.

## PROGRAM AND SERVICES DESCRIPTION

### ASSISTED LIVING – BASE SERVICES

The Resident will receive the following services (the "Assisted Living Base Services"), which are included in the Assisted Living Base Fee, subject to the terms and conditions of this Agreement:

A.     Basic assistance including monitoring and observing of the Resident, providing the Resident with reminders and supervision with activities of daily living, including, but not limited to, eating, bathing, dressing, grooming, toileting, ambulating, and orientation. This includes verbal assistance and/or direction with showering or hydro-tub bath one time per week. It does not include any other hands-on assistance with any of the above-mentioned activities of daily living.

B.     Occupancy of the Suite identified in Exhibit 1, and use of any property of the Community located in the Suite. If the resident chooses not to furnish his/her Suite with their own furniture, the Community shall make available furniture as set forth in Exhibit 3, Schedule of Additional Amenities. The Resident may furnish the Suite with his/her own furniture, including minor electrical appliances and special equipment (such as television and radios), provided that the Community's size restrictions and safety standards are met. Members of the Community's staff reserve the right to inspect and install all electrical appliances that the Resident uses.

C.     The use of the common areas of the Community, which are provided by the Community for the common use and enjoyment of all residents. For the purpose of this Agreement, the term "common areas" shall be deemed to include hallways, walkways, meeting rooms, activity rooms, dining rooms and open common spaces located within and under the control of the Community.

D.     Three (3) meals daily, served in the dining room and availability of snacks twenty-four (24) hours per day, seven (7) days per week.

E.     Daily light housekeeping services of the Suite, consisting of making the bed and removal of the trash.

F.     Weekly light housekeeping services of the Suite, consisting of vacuuming, dusting cleared surfaces, cleaning bathroom and kitchenette areas, and changing bed linens.

G.     Weekly personal laundry and linen service, including pickup and delivery, but not including dry cleaning services.

H.     Transportation in the Community mini-van or other vehicle as scheduled by the Community, for shopping and other community based services and for activities sponsored by the Community.

Revised 7/1/97

I. A wellness visit conducted at regular intervals, or upon a change i the Resident's condition. Wellness visits are by appointment as scheduled by the Community The wellness visit report shall not be a substitute for the Physician's Report or for the requi ement that the Resident have a personal physician.

J. Regularly scheduled social, educational, religious, recreational and wellness programs.

K. Utilities, including heat and air conditioning; water and sewe services; and electricity. The Resident is responsible for local and long distance telephone : rvice and for television hookup and fees as described in <u>Exhibit 3</u>.

L. An emergency response system. A staff member is available at all times and can request emergency medical assistance from emergency services (such as 91 and private ambulances) available in the area. These emergency medical services are not fu ished by the Community and any costs related to these services are to be borne by the Resident.

## ASSISTED LIVING – ADDITIONAL SERVICES

The assisted living *"Plus"* and *"Plus Plus"* programs are designed for residents v to require or prefer more frequent and intensive assistance with activities of daily living. The a ditional fees associated with these programs are determined by a personalized assessment uti zing a point system and are in addition to the assisted living base fee. The additional assisted l ring services available under the *"Assisted Living Plus"* and *"Assisted Living Plus Plus"* program : include:

A. Verbally instructing the Resident step-by-step on activities of daily iving;

B. Physical assistance with bathing or showering;

C. Assistance with the preparation of a hydro-tub bath or shower two to four times a week;

D. Physical assistance with dressing, clothes selection and orientation;

E. Physical assistance with grooming, including but not limited to ha r and teeth brushing, shaving, etc.;

F. Physical assistance with eating and/or meals that require mechanical a eration;

G. Physical assistance with walking, wheelchair propelling, and prescribe l exercises;

H. Linen and/or laundry services that are needed more often than one time a week;

I. Assistance with bladder and/or bowel incontinence, but not including the cost of the incontinence supplies, which will be billed separately to the Resident.

## REMINISCENCE PROGRAM

The Community's Reminiscence Program ("Reminiscence Program") is designed for residents who have a diagnosis on their Physician's Report of Alzheimer's disease or related disorder such as dementia or, it has been determined through the Reminiscence Assessment that t is in the best interest of the Resident. Residents in this program will reside in accommodations within our specially designed Reminiscence Neighborhood. The Reminiscence Neighborhood is staffed 24 hours a day by care managers who have been specially trained to support people with memory loss.

Included in the Reminiscence Base Fee is your choice of accommodations within our specially designed Reminiscence Neighborhood.

The Reminiscence Program Fee includes some basic assistance with activities of daily living and services B through L listed under "Assisted Living – Base Services."

## "REMINISCENCE PLUS" AND "REMINISCENCE PLUS PLUS" PROGRAMS

The Community's "Reminiscence Plus" and "Reminiscence Plus Plus" Programs for Alzheimer's and Dementia care are designed for residents who require or prefer more frequent and intensive assistance with activities of daily living, as determined by the personalized assessment utilizing a point system. The Reminiscence Plus and Reminiscence Plus Plus Program Fees are in addition to the Reminiscence Base Fee.

## ENHANCED CARE PROGRAM

The Community's Enhanced Care Program is designed for Residents whose needs cannot be met under the Assisted Living Plus Plus Program because they require additional staff time or they consistently require assistance by more than one caregiver.

## INDIVIDUALIZED CARE PROGRAM

The Community's Individualized Care Program offers one-on-one care in 4, 6, 8, 12 or 24 hour shifts. This program is designed for residents who need "individualized, uninterrupted care" during their peak hours of assistance with activities of daily living, extreme behaviors or if they prefer more personal attention.

## MEDICATION ASSISTANCE AND ADMINISTRATION

Medication Assistance and Administration is available to those residents who need or prefer that the Community assist the Resident to self-administer medications or administer medications. This service is provided in two tiers. The Resident will be placed in a tier based on the number of medications, the method of administration and the amount and type of assistance involved. All medications must be prescribed by the Resident's personal licensed physician. Medication assistance includes: reminding the Resident to take the medication; opening the container if the Resident is unable to do so; checking the medication to ensure that it is the correct medication and dose; observing the Resident taking the medication; documenting whether the Resident has

taken the medication; and ordering additional medication. Medication administration shall be provided as allowed by state law.

When the Community administers a Resident's medications, the Community must administer all medications, including over-the-counter medications, unless there is a prescription from the Resident's physician stating the Resident can administer a certain medication him/herself and can keep that medication in his/her Suite. If the Resident is able to self-administer his/her own medications, the medications must be kept in a locked box or area (at Resident's expense) in the Resident's Suite.

The Community's Medication Assistance and Administration Program requires the use of a uniform medication packaging system. The Resident may purchase medications from a pharmacy that has contracted with the Community, or the Resident can provide written notice to the Community that he/she will obtain medications from another pharmacy. While the Resident is free to select any pharmacy, the pharmacy must provide medications in a manner consistent with the Community's system in order for the Resident to participate in the Medication Assistance and Administration Program.

## CONTINENCE CARE

Continence products are available to residents who need them, for an additional charge. When a resident opts for the Community to supply him or her with continence products, the Community staff will conduct an assessment to determine the Resident's level of need. There are three (3) levels of need, which correspond to the number of products the Resident requires per day, Level I, Level II, and Level III.

**EXHIBIT 1**

**YOUR SUITE AND FEES**

Name of Resident: _Delphine Kaiser_

Suite #: _203_      Occupancy Date: _____

| | |
|---|---|
| Assisted Living Base Fee | $_____/day |
| Assisted Living Plus Program Fee *(if applicable)* | $_____/day |
| Assisted Living Plus Plus Program Fee *(if applicable)* | $_____/day |
| Reminiscence Base Fee | $__90__/day |
| Reminiscence Program Fee *(if applicable)* | $_____/day |
| Reminiscence Plus Program Fee *(if applicable)* | $_____/day |
| Reminiscence Plus Plus Program Fee *(if applicable)* | $__61__/day |
| Enhanced Care Program Fee *(if applicable)* | $__18__/day |
| Medication Assistance and Administration | $_____/day |
| Tier _LN C_ | |
| Continence Care | $__6__/day |
| Level _I_ | _1 dac_ |
| _CABLE_ | |

**Total Daily Fee:**     _respite_     $__176__/day

**Community Fee:**      $__NA__ *(one-time fee)*

     Administrative Charge:      $_____

**Effective Date:** _5/1/09_

## EXHIBIT 1-A

### SECOND RESIDENT'S FEES

Name of Second Resident: _____

Occupancy Date: _____

| | |
|---|---|
| Assisted Living Base Fee | $_____/day |
| Assisted Living Plus Program Fee *(if applicable)* | $_____/day |
| Assisted Living Plus Plus Program Fee *(if applicable)* | $_____/day |
| Reminiscence Base Fee | $_____/day |
| Reminiscence Program Fee *(if applicable)* | $_____/day |
| Reminiscence Plus Program Fee *(if applicable)* | $_____/day |
| Reminiscence Plus Plus Program Fee *(if applicable)* | $_____/day |
| Enhanced Care Program Fee *(if applicable)* | $_____/day |
| Medication Assistance and Administration | $_____/day |
|       Tier _____ | |
| Continence Care | $_____/day |
|       Level _____ | |

Total Daily Fee:  $_____/day

Community Fee:  $_____ *(one-time fee)*
      Administrative Charge:  $_____

Effective Date : _____

Grosse Pointe Woods, MI - Writeable Exhibits 1-3.doc
Revised 7/15/07

## EXHIBIT 2

## SCHEDULE OF COMMUNITY FEES AND CREDITS

**A.** **Schedule of Fees.** The fees for all of the various services and products offered by the Community are as follows:

| Service or Product | Fee Per Day | |
|---|---|---|
| Assisted Living Base Fee | $_____/day | |
| Assisted Living Plus Program Fee | $___32.00___/day | |
| Assisted Living Plus Plus Program Fee | $___49.00___/day | |
| Reminiscence Base Fee | $___90___/day | |
| Reminiscence Program Fee | $___41.00___/day | |
| Reminiscence Plus Program Fee | $___61.00___/day | |
| Reminiscence Plus Plus Program Fee | $___18.00___/day | |
| Enhanced Care Program Fee | $___18.00___/day | |
| Medication Assistance and Administration | Tier 1   $_12.00___  <br> Tier 2   $_18.00___ | included |
| Continence Care | Level I $ __6.00___ <br> Level II $ ___11.00___ <br> Level III $ ___16.00___ | |

**Effective Date:** ___5/1/08_____

**B.** **Schedule of Credits.** See Article III of the Residency Agreement for information about possible credits.

| Meal Credit | $ 3.00 /day |
|---|---|
| Medication Assistance and Administration Credit | Tier 1 $ 12.00 /day<br>Tier 2 $ 18.00 /day |
| Assisted Living Base Fee Credit | $ /day |
| Assisted Living Plus Program Credit | $ 32.00 /day |
| Assisted Living Plus Plus Program Credit | $ 49.00 /day |
| Reminiscence Base Fee Credit | $ 90 /day ✓ |
| Reminiscence Program Credit | $ 41.00 /day |
| Reminiscence Plus Program Credit | $ 61.00 /day ✓ |
| Reminiscence Plus Plus Program Credit | $ 18.00 /day ✓ |
| Enhanced Care Program Credit | $ 18.00 /day |
| Continence Care Credit | Level I $ 6.00 ✓<br>Level II $ 11.00<br>Level III $ 18.00 |

**Effective Date:** 5/1/09

MI Mansion Exhibits

## EXHIBIT 3
## SCHEDULE OF ADDITIONAL AMENITIES

**Additional Amenities**

1. Assistance with Resident requested special maintenance projects, such as hanging pictures, furniture assembly, *etc*, beyond that maintenance required by this Agreement. The use of outside contractors or handyman services is not permitted without prior written approval of Community.   $   20.00   /day

2. Housekeeping services in addition to those included as part of the Assisted Living Services   $   /day

3. Transportation for personal trips, scheduled in advance by the Resident. The hours that transportation is available for scheduling will be determined by Community.   $   14.00   /hour
.42 per mile c utside 3-5 mile radius

4. Rental furniture   $   /month

5. Guest meals   $   4.00   /breakfast
$   7.00   /lunch
$   6.00   /dinner

6. Barber and Beauty services   $   See Po ted Rates

7. Dry cleaning   $   N/A

8. Other   $   N/A

## EXHIBIT 7
## RESIDENT GRIEVANCE PROCEDURE

The Community encourages all residents and family members to express their complaints about the Community and to suggest remedies or improvements in its policies and services. Your Community will try to be responsive to reasonable concerns and suggestions. We also encourage residents and family members to let staff know when services and policies are satisfactory and should continue unchanged.

### PROCEDURES:

The Community team members are expected to listen courteously and respectfully to complaints. If team members are able to do so, they will attempt to explain the reason for the procedure or incident in question. If you are not satisfied, team members will explain the Community's steps for making a complaint which are as follows:

1. Discuss the concern or complaint with the Executive Director of the Community, _Kathy Ostrowski_ . If there is no resolution to the matter or you do not feel comfortable discussing the matter with the Executive Director, then,

2. Discuss the concern or complaint with the Area Operations Manager of the Community, Christopher Bowman , whose voicemail number is 248-601- 1152 . If there is no satisfaction at that point, then,

3. Contact the Senior Area Manager of Operations, Chuck Latta whose voicemail number is 877-605-7130 ext. 43617. If there is no satisfaction at that point, then

4. Contact the Sunrise Senior Living National Office Customer Service Center to express the complaint at 1-800-929-4124. If you are still unsatisfied then,

5. Contact the following agencies:

| | |
|---|---|
| State Licensing Authority | Ombudsman |
| Department of Consumer and Industry Services | Michigan Long Term Care Ombudsman |
| Bureau of Family Services | |
| 7109 W. Saginaw 2nd Floor | |
| P.O. Box 30650 | Toll-Free Number: (866)485- 393 |
| Lansing, MI 48909-8150 | |
| Toll-Free Number: (866) 856-0126 | |

Another way to air grievances is through the monthly Resident Council meetings.

At no time will any team member of the Community take any improper action against a resident for making a complaint, whether or not the complaint is valid. The Community will consider dismissing any employee who is found to be threatening, ignoring, humiliating, retaliating, or discriminating against residents who voice complaints.

Whenever any team member observes what appears to be a violation of resident rights or a violation of any of the laws and regulations under which the Community must operate, whether or not a resident has actually voiced a complaint, the team member is

immediately expected to correct the situation, if possible.  If the team member is unable to do so, he/she is to bring the problem to the attention of the Executive Director or Administrative Team Member on Call who will ensure corrective action and, when required, notify authorities.

**RESIDENT/ RESPONSIBLE PARTY:**     **SECOND RESIDENT/ RESPONSIBLE PARTY:**

_____     _____
(Signature)                          (Signature)

_____     _____
(Print Name)                         (Print Name)

_____     _____
(Date)                               (Date)

MI Core AL Exhibits

## EXHIBIT 5
## RESIDENT RIGHTS

(a) A resident shall not be denied appropriate care on the basis of race, religion, color, national origin, sex, age, disability, marital status, sexual preference, or source of payment.

(b) An individual who is or has been a resident is entitled to inspect, or receive for a reasonable fee, a copy of his or her medical record upon request in accordance with the medical records access act, 2004 PA 47, MCL 333.26261 to 333.26271. Except as otherwise permitted or required under the health insurance portability and accountability act of 1996, Public Law 104-191, or regulations promulgated under that act, 4 CFR parts 160 and 164, a third party shall not be given a copy of the resident's medical record without prior authorization of the resident.

(c) A resident is entitled to confidential treatment of personal and medical records, and may refuse their release to a person outside the health facility or agency except as required because of a transfer to another health care facility, as required by law or third party payment contract, or as permitted or required under the health insurance portability and accountability act of 1996, Public Law 104-191, or regulations promulgated under that act, 45 CFR parts 160 and 164.

(d) A resident is entitled to privacy, to the extent feasible, in treatment and in caring for personal needs with consideration, respect, and full recognition of his or her dignity and individuality.

(e) A resident is entitled to receive adequate and appropriate care, and to receive, from the appropriate individual within the health facility or agency, information about his or her medical condition, proposed course of treatment, and prospects for recovery, in terms that the resident can understand, unless medically contraindicated as documented by the attending physician in the medical record.

(f) A resident is entitled to refuse treatment to the extent provided by law and to be informed of the consequences of that refusal. If a refusal of treatment prevents a health facility or agency or its staff from providing appropriate care according to ethical and professional standards, the relationship with the resident may be terminated upon reasonable notice.

(g) A resident is entitled to exercise his or her rights as a resident and as a citizen, and to this end may present grievances or recommend changes in policies and services on behalf of himself or herself or others to the health facility or agency staff, to governmental officials, or to another person of his or her choice within or outside the health facility or agency, free from restraint, interference, coercion, discrimination, or reprisal. A resident is entitled to information about the health facility's or agency's policies and procedures for initiation, review, and resolution of resident complaints.

MI Core AL Exhibits

## EXHIBIT 5 CONT.

(h) A resident is entitled to information concerning an experimental procedure proposed as a part of his or her care and has the right to refuse to participate in the experimental procedure without jeopardizing his or her continuing care.

(i) A resident is entitled to receive and examine an explanation of his or her bill regardless of the source of payment and to receive, upon request, information relating to financial assistance available through the health facility or agency.

(j) A resident is entitled to know who is responsible for and who is providing his or her direct care, is entitled to receive information concerning his or her continuing health needs and alternatives for meeting those needs, and to be involved in his or her discharge planning, if appropriate.

(k) A resident is entitled to associate and have private communications and consultations with his or her physician, attorney, or any other person of his or her choice, and to send and receive personal mail unopened on the same day it is received at the health facility or agency, unless medically contraindicated as documented by the attending physician in the medical record. A resident's civil and religious liberties, including the right to independent personal decisions and the right to knowledge of available choices, shall not be infringed and the health facility or agency shall encourage and assist in the fullest possible exercise of these rights. A resident may meet with, and participate in, the activities of social, religious, and community groups at his or her discretion, unless medically contraindicated as documented by the attending physician in the medical record.

(l) A resident is entitled to be free from mental and physical abuse and from physical and chemical restraints, except those restraints authorized in writing by the attending physician for a specified and limited time or as are necessitated by an emergency to protect the resident from injury to self or others, in which case the restraint may only be applied by a qualified professional who shall set forth in writing the circumstances requiring the use of restraints and who shall promptly report the action to the attending physician. In case of a chemical restraint, a physician shall be consulted within 24 hours after the commencement of the chemical restraint.

(m) A resident is entitled to be free from performing services for the health facility or agency that are not included for therapeutic purposes in the plan of care.

(n) A resident is entitled to information about the health facility or agency rules and regulations affecting a resident's care and conduct.

(o) A resident is entitled to adequate and appropriate pain and symptom management as a basic and essential element of his or her medical treatment.

MI Core AL Exhibits

## EXHIBIT 5 CONT.

(p) A married resident is entitled to meet privately with his or her spouse in a room that assures privacy. If both spouses are residents in the same facility, they are entitled to share a room unless medically contraindicated and documented by the attending physician in the medical record.

(q) A resident is entitled to retain and use personal clothing and possessions as space permits, unless to do so would infringe upon the rights of other patients or residents, or unless medically contraindicated as documented by the attending physician in the medical record. Each resident shall be provided with reasonable space.

(r) A resident is entitled to the opportunity to participate in the planning of his or her medical treatment.

(s) A resident may be transferred or discharged only for medical reasons, or his or her welfare or that of other residents, or for nonpayment of his or her stay, except as provided by title XVIII or title XIX. A resident is entitled to be given reasonable advance notice to ensure orderly transfer or discharge. Those actions shall be documented in the medical record.

(t) A resident is entitled to be fully informed before or at the time of admission and during stay of services available in the facility, and of the related charges including any charges for services not covered under title XVIII, or not covered by the facility's basic per diem rate. The statement of services provided by the facility shall be in writing and shall include those required to be offered on an as-needed basis.

(u) A resident is entitled to manage his or her own financial affairs, or to have at least a quarterly accounting of personal financial transactions undertaken in his or her behalf by the facility during a period of time the resident has delegated those responsibilities to the facility. In addition, a resident is entitled to receive each month from the facility an itemized statement setting forth the services paid for by or on behalf of the patient and the services rendered by the facility.

(v) A resident is entitled to be fully informed, as evidenced by the resident's written acknowledgment, before or at the time of admission and during stay, of the policy required by this section. The policy shall provide that if a resident is adjudicated incompetent and not restored to legal capacity, the rights and responsibilities set forth in this section shall be exercised by a person designated by the resident. The health facility or agency shall provide proper forms for the resident to provide for the designation of his person at the time of admission.

MI Core AL Exhibits

**RESIDENT/ RESPONSIBLE PARTY:**

**SECOND RESIDENT/ RESPONSIBLE PARTY:**

_(Signature)_

_(Signature)_

Ralph Kaiser

_(Print Name)_

_(Print Name)_

4/30/09

_(Date)_

_(Date)_

Revised 6/14/07

MI Core AL Exhibits

## EXHIBIT 6

## RESPONSIBLE PARTY ADDENDUM

THIS Addendum ("Addendum") is entered into as of this _____ ay of _____ Muy _____, 20__, by and among _Delphene Pacset_ (hereinafter referred to as the "Resident"), _Ralph Pruse_ (the "Responsible Party") and Sunrise Senior Living Management/Services, Inc., ("Sunrise"), Manager for Owner.

## RECITALS

WHEREAS, the Resident desires to live in the suite, or already lives in th suite (the "Suite") identified in a Residency Agreement between Sunrise and the Reside t (the "Residency Agreement") of which this Addendum is made a part; and

WHEREAS, Sunrise is willing to enter into the Residency Agreement f the Resident identifies an individual who is willing to provide certain assistance to r on behalf of the Resident in the event that such assistance is necessary, and who is will ng to pay the Resident's financial obligations to Sunrise under the Residency Agreement n the event that the Resident does not make payments when due; and

WHEREAS, the Responsible Party has agreed to provide such assistance a d to pay such obligations if and as necessary.

In consideration of the foregoing, the parties agree as follows:

A. In the event that the condition of the Resident makes such assistance necessary or advisable, the Responsible Party, upon the request of the Community, w ll:

1. Participate as needed with the Community staff in evaluating the Resident's needs and in planning and implementing an appropriate plan for the Resident's care;

2. Assist the Resident as necessary to maintain the Resident's welfare and to fulfill the Resident's obligations under the Reside ncy Agreement;

3. Assist the Resident in transferring to a hospital, nursing hom , or other medical facility in the event that the Resident's needs ca no longer be met by the Community;

4. Assist in removing the Resident's personal property from the Apartment/Suite when the Resident leaves the Community;

5. Make necessary arrangements, or assist the legally responsi ble person in making necessary arrangements, for funeral services nd burial in the event of death.

MI Core AL Exhibits

**B.** In the event that the Resident fails to pay any amount or amoun; due to the Community under the Residency Agreement, the Responsible Party hereby . grees to pay the Community all amounts due from the Resident under the Residency Ag eement, as it may be amended from time to time, including any amounts resulting from i creases in fees or charges authorized by the Residency Agreement. The Responsible Part · agrees to pay the Community within thirty (30) days of receiving each notice f )m the Community of nonpayment by the Resident.

**C.** The Responsible Party acknowledges that he/she has received nd has reviewed a copy of the Residency Agreement, and has had an opportunity to sk any questions the Responsible Party may have.

**D.** The Recitals hereto are incorporated in this Addendum as if s t forth herein.

IN WITNESS WHEREOF, the undersigned have duly executed this Add ndum, or have caused this Addendum to be duly executed on their behalf, as of the day a d year first above written.

SUNRISE:

Signature

Executive Director
Title

RESIDENT:

Signature

Print Name

Address

RESPONSIBLE PARTY:

Signature

Ralph Kruse
Print Name

1978 S. Barlett St Clair MI 480A
Address

Delphine Kruse
Resident's Name

12119_1.DOC

Revised 6/14/1